Argued September 28, affirmed November 8, reconsideration
denied December 15, 1976, petition for review
denied February 1, 1977

WARNER, *Petitioner,*

*v.*

PUBLIC WELFARE DIVISION, *Respondent.*

(No. 4-14/01-OZB 809-0, CA 6212)

555 P2d 1266

*Mark Hardin,* Portland, argued the cause and filed the brief for petitioner.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

**LEE, J.**

Petitioner appeals from a final order issued by a hearing officer of the Public Welfare Division, holding, in effect, that the Division's southeast Portland branch office had correctly authorized the payment of an assistance grant sufficient to supplement petitioner's monthly income to "General Assistance" standards during the first six months of 1976.[1] It is petitioner's contention that the Division had a legal obligation to provide assistance in an amount greater than that actually contributed during the period involved, with the result that she failed to receive some $20 per month to which she was entitled.

While cohabiting prior to December 10, 1975, petitioner and her husband were receiving aid under the "Supplemental Security Income" (SSI) program, an assistance program funded entirely by the federal government and administered by the Social Security Administration of the Department of Health, Education and Welfare. Title XVI of the Social Security Act, 42 USC §§ 1381-1383 (Supp IV, 1975).[2]

Pursuant to the terms of 42 USC § 1382a(2) and

---

[1] "General Assistance" is a wholly state-funded and state-administered program designed to assist "needy persons" "who are not eligible for a federally-matched program [or who are] eligible for a federally-matched program [but] have money management problems." OAR 461-5.336; *see* ORS 411.010(2), 411.710 through 411.795; OAR 461-5.305, 461-5.320.

[2] Prior to January 1, 1974, federal legislation provided for three separate aid programs designed to assist designated categories of "needy persons." Old Age Assistance, 42 USC §§ 301-306 (1970); Aid to the Blind, 42 USC §§ 1201-1206 (1970); and Aid to the Disabled, 42 USC §§ 1351-1354 (1970). Substantially funded by the federal government those programs were administered by the individual states which, in accordance with broad guidelines incorporated into the federal legislation, were permitted to establish their own standards of eligibility and aid. *See* ORS chs 412-413. Those specific programs were abolished, however, as of January 1, 1974—Social Security Amendments of 1972, Pub L 92-603, Title III, § 303(a)(b), 86 Stat 1484—when the newly enacted "Supplemental Security Income for Aged, Blind, and Disabled" program came into effect. Unlike the previously existing programs, SSI is both funded and administered by the federal government which, through the Social Security Administration, applies uniform standards of eligibility and benefits throughout the entire nation.

b(2) (Supp IV, 1975), the combined SSI assistance grant available to petitioner and her husband as an "eligible couple" was "adjusted," i.e., reduced by the amount of any income received by either petitioner or her husband in any given month. Because petitioner's husband receives monthly benefits under the Social Security Old Age Survivors and Disability Insurance Program, benefits based on his earnings and contributions while a wage earner,[3] the total assistance grant available to them amounts to an SSI payment of only $30 and an "Oregon Supplemental Income Payment" (OSIP) of $40.[4]

On December 10, 1975, petitioner and her husband separated; in accordance with the terms of 42 USC § 1382c(b) (Supp IV, 1975), however, they were to remain an "eligible couple" for purposes of SSI eligibility until they had lived apart for more than six months, and would thus share equally their "couple's" grant during that probationary period.[5] Thus, despite

---

[3] 42 USC §§ 401-403 (1970).

[4] As a condition to the receipt of any medical assistance funds under Title XIX of the Social Security Act, states are required to provide supplementary payments to individuals receiving SSI aid sufficient to raise their monthly income to an amount equivalent to that received by those same individuals under the now abolished Old Age Assistance, Aid to the Blind, and Aid to the Disabled programs in December of 1973. Pub L 93-66, Title II, § 212, 87 Stat 155, *as amended* Pub L 93-233, § 10, 87 Stat 958 (1973), Pub L 93-335, § 2(a), 88 Stat 291 (1974). Under authority of ORS 411.114, enacted during the 1973 legislative session (Oregon Laws 1973, ch 651, § 2), the Division first entered into an agreement to make such supplementary payments on September 14, 1973.

[5] 42 USC § 1382c(b) (Supp IV, 1975), provides in relevant part:

"* * * [T]he term 'eligible spouse' means an aged, blind or disabled individual who is the husband or wife of another aged, blind, or disabled individual and who has not been living apart from such other aged, blind, or disabled individual for more than six months. * * *"

HEW regulations provide that the "six months rule," the acknowledged purpose of which is that of discouraging couples from separating for the purpose of obtaining greater assistance benefits (*see* HR Rep No 92-231, 92d Cong, 2d Sess (1972), reprinted at 3 US Code Congressional & Administrative News 5136), does not apply where the marriage of an "eligible couple" is terminated by death, a divorce or annulment decree, or when one spouse begins living with another party and they hold themselves out to the community as husband and wife. 20 CFR 416.1040 (1976), 39 Fed Reg 23260 (1974). *See also* Mansfield v. Weinberger, 398 F Supp 965 (DDC 1975).

the fact that after December 10, 1975, petitioner no longer had access to or the use of any part of the Social Security insurance benefits paid to her husband on his own account, the receipt of that income by petitioner's husband continued to have the effect of reducing the SSI benefits available not only to himself, but also to petitioner throughout the first six months of their separation.

Absent any further intervention by the state, petitioner's total monthly income for the first six months of 1976 would, therefore, have consisted of a $15 SSI payment—her share of the $30 couple's benefit—supplemented by a $20 OSIP grant.[6] Cognizant of the fact that an income of $35 per month would be inadequate to meet petitioner's needs the Division did, however, intervene. As a "hardship exception" petitioner was awarded an additional supplement of $119 per month, enough to raise her income to an amount equal to the general assistance standard for a single person living alone,[7] until July 1, 1976 when she became eligible to receive an SSI grant of approximately $158 per month, supplemented by a $17 OSIP benefit, as a disabled person living alone.[8]

On appeal petitioner contends that between January and July of 1976 she was eligible for and should have received a monthly income of approximately $175, some $20 per month more than that actually provided, under Oregon's own "Aid to the Disabled" program—ORS 412.510 through 412.630.[9] As noted by the Division's hearing officer, ORS

---

[6] OSIP benefits were, subsequent to the separation of the parties, divided equally between petitioner and her husband pursuant to Oregon Public Welfare Division Staff Manual, Vol 1, Section XV-A(2).

[7] *See* note 1; OAR 461-6.010, Table 1.

[8] 20 CFR 416.410 (1976), 40 Fed Reg 52742 (1975); OAR 461-6.010, Table 11.

[9] ORS 412.530(1) provides in relevant part that "[t]he amount of aid to be granted shall be determined on the basis of need, within the limits of available public assistance funds * * *." OAR 461-6.010, Table 7, sets the "standard of need" for a disabled individual living alone at $174.51.

412.510 through 412.630 were enacted to enable the state to participate in the substantially federally funded but state-administered assistance program created by 42 USC §§ 1351-1354 (Supp IV, 1975). Because that program was itself terminated as of December 31, 1973,[10] the existing effect of the state's enabling statutes is not apparent. Assuming for purposes of argument, however, that those statutes continue to provide for a viable aid program, petitioner is, by definition, not included among those eligible for its benefits.

ORS 412.520(1) provides that "aid to the disabled" benefits shall be granted to any

"* * * needy person 18 years of age or older who is disabled and who:

"(a) Is a resident of the State of Oregon.

"(b) Is not an inmate of a public institution (except as a patient in a medical institution) or an institution for tuberculosis or mental diseases, but aid may be granted to a recipient who has been diagnosed as having tuberculosis or psychosis and is a patient in a medical institution as a result thereof.

"(c) *Is not receiving any other public asistance from the state* or from any instrumentality or political subdivision thereof, except for medical assistance pursuant to ORS chapter 414, *or any other type of federally aided public assistance.*[11]" (Emphasis supplied.)

As noted above, during the first six months of 1976 petitioner was, in fact, eligible for and receiving both SSI and OSIP benefits; the receipt of those grants of "public assistance" rendered her ineligible for any alternative benefits to which she might have been entitled under the "Aid to the Disabled" program embodied in ORS ch 412.

Affirmed.

[10] *See* note 2.

[11] ORS 411.010(3) defines "public assistance" as

"* * * *all types of assistance* including old-age assistance, aid to dependent children, aid to the blind, general assistance, aid to the permanently and totally disabled, medical assistance and such other functions as may be delegated to the administrator by or in accordance with the provisions of federal and state laws." (Emphasis supplied.)